UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

Timothy Smith,

Plaintiff,

v.

Unum Life Insurance Company of America,

Defendant.

Court File No. 19-cv-1659 (MJD/LIB)

**REPORT AND RECOMMENDATION**

This matter comes before the undersigned United States Magistrate Judge upon Defendant Unum Life Insurance Company of America's Motion to Enforce Settlement Agreement. [Docket No. 5]. Defendant's Motion was referred for report and recommendation to the undersigned by the Honorable Michael J. Davis. (Order of Referral [Docket No. 12]). The Court held a Motion Hearing on January 7, 2020.

For the reasons discussed herein, the Court recommends that Defendant Unum Life Insurance Company of America's Motion to Enforce Settlement Agreement, [Docket No. 5], be **GRANTED**.

## I. BACKGROUND AND STATEMENT OF ALLEGED FACTS

The instant case arises from Plaintiff Timothy Smith's ("Smith") allegations that he was wrongfully denied disability benefits under his employee benefits plan. (Compl. [Docket No. 1] ¶¶ 19–23). Defendant Unum Life Insurance Company of America ("Unum") is insurer and claim administrator of Smith's employee benefits plan. (Compl. [Docket No. 1] ¶¶ 4, 7; Ex. [Docket No. 1-1]). After paying Smith benefits for approximately two years, Unum terminated his disability benefits on March 30, 2018. (Compl. [Docket 1] ¶ 15). Plaintiff appealed Unum's

decision to terminate benefits through the claims administrative process, but his appeal was denied on October 23, 2018. (Id.).

On November 5, 2018, Plaintiff Smith, through his Counsel, Blake R. Bauer ("Plaintiff's Counsel"), sent a demand letter to Unum requesting to settle the present case for $120,000. (Bauer Decl. [Docket No. 16] ¶ 2). On December 20, 2018, Plaintiff's Counsel sent an email to Ann Courtney[1] ("Courtney") which stated, "Just checking in on the status of this case and settlement offer. . . . Attached the demand for your recollection." (Ex. 1 [Docket No. 9-1], at 9). On January 10, 2019, Courtney replied to Plaintiff's Counsel and stated, "I have been working with my client on this matter and can offer $25,000 in response to your $120,000 demand." (Id. at 7). Plaintiff's counsel responded by stating,

> My client understands the challenges with this policy and the way the definition of disability is written. With that being said, my client is still significantly disabled, as seen by the medical recommendations of him NOT working. With that being said, I can come down from our offer of $120,000 to $90,000. My client is very interested in pre-suit settlement, and hopefully we will not have to file this one.

(Id. at 6). Courtney responded by stating that Smith did not meet the policy requirements to be eligible for benefits, and that "Unum increases its offer to $30,000." (Id.). Plaintiff's Counsel responded, by stating "I can move to $70,000, and we understand the way this policy is considering 'disabled.'" (Id. at 5).

Subsequently, on January 10, 2019, Courtney sent Plaintiff an email which stated, "Blake – the absolute best I can do is meet you in the middle at $50,000. It is all I have. I hope my attempt to get to my best offer is appreciated. Please let me know if we can wrap this up at $50k." (Id. at 5). Upon receiving this email, Plaintiff's Counsel proceeded to call Smith. Plaintiff's Counsel told Smith that "it was a good offer given the circumstances." (Smith Decl.

[1] Assistant Vice President and Legal Counsel for Unum Group, the parent company of Defendant Unum. (Courtney Decl. [Docket No. 8] ¶ 1).

[Docket No. 15] ¶ 2). Smith told Plaintiff's Counsel that he "thought the offer would work." (Id. ¶ 3).

Following the communication with Smith, Plaintiff's Counsel responded to Courtney in a January 10, 2019, email that stated, "Ann[,] I can get my client to accept $50,000. We can wrap it up at that amount. Thanks for your consideration on this one. How long do you anticipate getting the agreement done for my client's signature." (Bauer Decl. [Docket No. 16] ¶ 5; Ex. 1 [Docket No. 9-1], at 4). Courtney responded to Plaintiff's Counsel by stating,

> Blake – thank you for this. I anticipate getting the draft settlement agreement to you early next week. If you send along the following information, we can order the check and send it to you pending your client's signature.
>
> 1. Payee(s) on the check;
> 2. Your firm's tax id if it is a payee; and
> 3. Your client's current mailing address.
>
> Once the check arrives in at my office, we will FedEx it to you.

(Ex. 1 [Docket No. 9-1], at 3).

Later on January 10, 2019, Smith called Plaintiff's Counsel expressing second thoughts about accepting the $50,000 offer. (Bauer Decl. [Docket No. 16] ¶ 6). Plaintiff's Counsel advised Smith of the risks in rejecting the settlement offer. (Id.). Smith said he would think about it. (Id.). About a week later, Smith called Plaintiff's Counsel and directed his attorney to counter with a higher demand than the $50,000. (Id.).

On January 11, 2019, Jennifer Majic[2] ("Majic"), emailed a draft settlement agreement and release to Plaintiff's Counsel. (Majic Decl. [Docket No. 18] ¶ 2; Ex. 2 [Docket No. 18-1]). On January 14, 2019, Majic submitted a check request for $50,000, pursuant to the alleged settlement agreement between Unum and Smith. (Id.).

---

[2] Advanced Senior Paralegal employed by Unum Group the parent company of Unum. (Majic Second Decl. [Docket No. 18] ¶ 1).

Despite his email of January 10, 2019, stating that he could get Plaintiff to accept the $50,000 offer, and receipt of the resulting draft settlement agreement and release on January 11, 2019, it was not until March 6 and 7, 2019, that Plaintiff's Counsel contacted Majic to let her know that Smith now rejected the $50,000 offer and would need more to settle this case. (Bauer Decl. [Docket No. 16] ¶ 7). Majic told Plaintiff's Counsel that she would speak to Unum regarding a higher settlement. (Id.).

On April 29, 2019, Majic sent an email to Plaintiff's Counsel stating that she had followed up with Unum, but they would not provide any additional authority because a settlement agreement had already been reached. (Id.; Ex. 1 [Docket No. 9-1], at 2). Plaintiff's Counsel responded by stating that he would talk to Smith about reconsidering his refusal to accept the $50,000 offer from January 10, but if Smith does not change his mind, the next step would be for him to file a lawsuit. (Ex. 1 [Docket No. 9-1], at 1–2). On May 2, 2019, Majic responded by stating that if Smith will not reconsider, Unum will initiate an action to enforce the settlement agreement. (Id. at 1).

On June 25, 2019, Smith filed his Complaint in this case. [Docket No. 1]. On November 12, 2019, Unum filed the present Motion to Enforce Settlement Agreement. [Docket No. 5].

## II. DEFENDANT UNUM LIFE INSURANCE COMPANY OF AMERICA'S MOTION TO ENFORCE SETTLEMENT AGREEMENT [Docket No. 5]

On January 7, 2020, the Court held a Motion Hearing on Defendant's Motion to Enforce Settlement Agreement. (Minute Entry [Docket No. 19]).

At the Motion Hearing, to his credit, Plaintiff's Counsel acknowledged the following. Plaintiff's Counsel had authority to engage in negotiations, but Smith had the final say in whether a settlement was accepted. (Jan. 7, 2020, Motion Hearing, Digital Record at 2:03, 2:09). The objective of negotiations was to reach an agreement to settle for an amount of money in

exchange for Smith not filing a lawsuit for long-term disability benefits. (Id. at 1:57, 2:05–2:06, 2:09) When Plaintiff's Counsel informed Smith of Defendant's $50,000 settlement offer, Smith accepted the offer. (Id. at 1:59, 2:04, 2:06, 2:08–2:09). Plaintiff's Counsel conveyed Smith's acceptance of the $50,000 settlement offer to Defendant via email with the intention that it would settle the claim for long-term disability benefits. (Id. at 1:57, 2:07–2:08, 2:09). Smith later changed his mind about accepting the settlement. (Id. at 1:59, 2:04, 2:08, 2:09).

**A. Standard of Review**

A district court possesses the inherent power to enforce a settlement agreement in a case pending on the court's docket. Butler v. LeeAnn Chin's Cuisine, No. 07-cv-3317 (PJS/JJG), 2008 WL 819767 at *2 (D. Minn. Mar. 25, 2008); Barry v. Barry, 172 F.3d 1011, 1013 (8th Cir. 1999). Courts retain such power as a means to further the policy "favoring the settlement of disputes and the avoidance of costly and time-consuming litigation." Butler, 2008 WL 819767 at *2 (quoting Bergstrom v. Sears, Roebuck & Co., 532 F. Supp. 923, 934 (D. Minn. 1982)).

"A settlement agreement is essentially a contract, subject to contractual rules of interpretation and enforcement." Goddard, Inc. v. Henry's Foods, Inc., 291 F. Supp. 2d 1021, 1028 (D. Minn. 2003); Sheng v. Starkey Labs., Inc., 53 F.3d 192, 194 (8th Cir. 1995) ("Settlement agreements are governed by basic principles of contract law"). To constitute a full and enforceable settlement, there must be such a definite offer and acceptance that it can be said there has been a "meeting of the minds" on the material terms of the agreement. Transclean Corp. v. Motorvac Techs., Inc., 2002 WL 31185886 at *8 (D. Minn. Sept. 30, 2002); Sheng, 117 F.3d at 1083. Courts determine the parties' intent to contract by examining the objective manifestations of the parties and not the parties' subjective, but unmanifested intent. TNT Props., Ltd. v. Tri-Star Developers, LLC., 677 N.W.2d 94, 102 (Minn. Ct. App. 2004). Only those terms

upon which the settlement hinges are considered material terms. Goddard, 291 F. Supp. 2d at 1028. Leaving "insubstantial matters for later negotiation . . . does not vitiate the validity of the agreement reached." Trnka v. Elanco Prods. Co., 709 F.2d 1223, 1226 n.2 (8th Cir. 1983) (applying Minnesota law) (determining that the fact that the parties left some details for counsel to work out during later negotiations cannot be used to avoid an otherwise valid agreement).

**B. Analysis**

In his written briefing, Plaintiff Smith argued: (1) Plaintiff's Counsel did not convey acceptance because he expressed that acceptance "was contingent on the parties' execution of a written settlement agreement;" (2) Plaintiff's Counsel did not have authority to accept a settlement on Smith's behalf; (3) "there was no meeting of the minds to all the material terms of the agreement;" and (4) "Smith answered the offer with a counter-offer, which effectively reject[ed] the original offer." (See, Mem. in Opp'n [Docket No. 14]). The Court will address each argument below.

**i. Written Agreement**

Smith first argues that he did not accept Defendant Unum's $50,000 settlement offer because Plaintiff's Counsel made acceptance contingent on Smith executing a written agreement.

"[A] written agreement is not a prerequisite to the enforcement of a settlement." Krenske Constr., Inc. v. Draper, A17-0974, 2018 WL 1902447, at *3 (Minn. Ct. App. Apr. 23, 2018) (alteration in original) (quoting Schumann v. Northtown Ins. Agency, Inc., 452 N.W.2d 482, 483 (Minn. Ct. App. 1990)). "A court may enforce a settlement agreement that contemplates the execution of documents at a later time, leaves insubstantial matters for later negotiation and/or that does not expressly resolve ancillary issues." Ayala v. Aerotek, Inc., No. 15-3095 (MJD/SER), 2017 WL 29659, at *3 (D. Minn. Jan. 3, 2017) (quoting Jackson v. Fed. Reserve

Emp. Ben. Sys., No. 08-4873 (DSD/FLN), 2009 WL 2982924, at *4 (D. Minn. Sept. 14, 2009)). Therefore, when a settlement agreement has been reached on the material terms, that agreement may be enforced even where the parties expressly contemplated the subsequent execution of a written agreement. See, e.g, Jackson, 2017 WL 29659, at *3.

Here, after Plaintiff Smith had told his attorney that the $50,000 offer could work, (Smith Decl. [Docket No. 15] ¶ 2), in a January 10, 2019, email, Plaintiff's Counsel stated: "Ann[,] I can get my client to accept $50,000. We can wrap it up at that amount. Thanks for your consideration on this one. How long do you anticipate getting the agreement done for my client's signature." (Ex. 1 [Docket No. 9-1], at 4). Although somewhat inartfully worded, this email constituted a definite acceptance of Unum's $50,000 settlement offer. (See, Id., see also, Jan. 7, 2020, Motion Hearing, Digital Record at 1:57, 2:07–2:08, 2:09). Moreover, Plaintiff's Counsel acknowledged that he intended this email as an acceptance to settle the claim for long-term disability benefits. (Jan. 7, 2020, Motion Hearing, Digital Record at 1:57, 2:07–2:08, 2:09).

The language employed by Plaintiff's Counsel indicates that subsequent execution of a written agreement was contemplated, however, it does not objectively indicate that Smith's acceptance of the settlement offer of $50,000 was contingent on the execution of a written agreement as a material term. See, Jackson, 2017 WL 29659, at *4 (finding a settlement was not contingent on the execution of a written agreement where an offer was made "[s]ubject to written settlement with confidentiality, non-disparagement, release, no re-employment—all the customary terms"). Although Smith may have subjectively intended his acceptance to be contingent on the execution of a subsequent settlement agreement, Smith's "subjective, unexpressed intent is irrelevant to the final terms of the agreement." See, Larsen v. Capital One Bank, N.A., No. 15-cv-4510 (WMW/HB), 2017 WL 2366334, at *3 (D. Minn. Apr. 12, 2017),

report and recommendation adopted by 2017 WL 2274470 (D. Minn. May 23, 2017); see also, Transclean Corp., 2002 WL 31185886, at *9 (finding unexpressed intent not to be bound until a writing was signed was "of no consequence"); TNT Props., 677 N.W.2d at 102 ("Minnesota follows the objective theory of contract formation, under which an outward manifestation of assent is determinative, rather than a party's subjective intent.").

Therefore, the Court finds that Smith's argument that his acceptance was contingent on the execution of a written agreement as a material term is unpersuasive.

**ii. Authority**

Smith next argues that he did not accept Unum's $50,000 settlement offer because Plaintiff's Counsel did not have express authority to enter a settlement agreement on his behalf, nor did Plaintiff's Counsel convey that he had such authority. (Mem. in Opp'n [Docket No. 14], at 4).

"Under Minnesota law, settlement of a client's claim is not subsumed with the ordinary agency of an attorney for his clients, so an attorney must be specially authorized to settle a claim." Mirapex Prods. Liab. Litig., No. 11-412 (MJD/FLN), 2013 WL 4519348, at *1 (D. Minn. Jan. 11, 2013) (quoting Barry v. Barry, 172 F.3d 1011, 1013 (8th Cir. 1999)). "Except in an emergency, an attorney has no authority to settle a case in the absence of his client's knowledge or consent. However, an attorney may settle a claim with the authorization of his client." Rosenberg v. Townsend, Rosenberg & Young, Inc., 376 N.W.2d 434, 436 (Minn. Ct. App. 1985) (citations omitted). "This authority, however, must be express; it has been stated that 'an attorney has not by implication the right to compromise his client's cause of action.'" (Id. at 437 (quoting Albert v. Edgewater Beach Bldg. Corp., 15 N.W.2d 460, 463 (Minn. 1944)). "Express authority 'can be created by written or spoken words or the conduct of the principal which, reasonably

interpreted, causes an agent to believe that the principal desires him [or her] to act in a particular manner on the principal's account.'" Harris v. Ark. State Highway and Transp. Dept., 437 F.3d 749, 751 (8th Cir. 2006) (alteration in original) (quoting Turner v. Burlington N. R.R. Co., 771 F.2d 341, 345 (8th Cir. 1985)).

Here, Plaintiff's counsel had express authority to engage in negotiations, but Smith had the final say in whether a settlement was accepted. (Jan. 7, 2020, Motion Hearing, Digital Record at 2:03, 2:09). Acting within his express authority, Plaintiff's Counsel engaged in negotiations with Unum to resolve Smith's claim for long-term disability benefits. (See, e.g., (Ex. 1 [Docket No. 9-1], at 5–9; Jan. 7, 2020, Motion Hearing, Digital Record at 1:57, 2:05–2:06, 2:09). After Unum presented the $50,000 offer as its last, best settlement offer, Plaintiff's Counsel contacted Smith and discussed the offer with him. (See, e.g., Smith Decl. [Docket No. 15] ¶ 2). Smith advised his counsel that he accepted the $50,000 offer. (See, e.g., Id. ¶ 2; Jan. 7, 2020, Motion Hearing, Digital Record at 1:59, 2:04, 2:06, 2:08–2:09).

By accepting the offer, Smith objectively expressed that Plaintiff's Counsel had authority to convey his acceptance to Unum and/or to accept Unum's $50,000 settlement offer on his behalf. See, Harris, 437 F.3d at 751–52 (finding an attorney had express authority where the client communicated to her attorney that she agreed to settle the case which was reasonably interpreted by her attorney to signify that the client "desired him to enter into the proposed settlement on her account."). Consequently, Plaintiff's Counsel acted within that express authority when he accepted Unum's $50,000 settlement offer on behalf of Smith by sending the January 10, 2019, email, thereby creating an enforceable settlement agreement. See, Id.

Only later, after a settlement agreement was created, did Smith change his mind and demand that his attorney seek a higher settlement amount. (See, e.g., Bauer Decl. [Docket No.

16] ¶ 6; Jan. 7, 2020, Motion Hearing, Digital Record at 1:59, 2:04, 2:08, 2:09). However, the fact that Smith had second thoughts and later changed his mind regarding his acceptance of the settlement offer is irrelevant as to whether Plaintiff's Counsel had express authority to enter a settlement agreement on Smith's behalf when Plaintiff's Counsel sent the January 10, 2019, email. See, Harris, 437 F.3d at 752; cf., Ayala, 2017 WL 29659, at *3 ("[The plaintiff's] change of heart and refusal to sign the formal written agreement does not change the fact that an enforceable agreement exists.").

Therefore, the Court finds that Smith's argument that he did not accept the settlement offer because Plaintiff's Counsel did not have express authority to enter a settlement on his behalf to be unavailing on the present record.

**iii. Material Terms**

Smith further argues that a settlement was not reached because "there was no meeting of the minds as to all material terms of the settlement." (Mem. in Opp'n [Docket No. 14], at 6).

"To constitute a full and enforceable settlement, there must have been a 'meeting of the minds' on the material terms of the agreement." Jackson, 2009 WL 2982924, at *4. "Settlement agreements that do not expressly resolve ancillary issues can, nevertheless, be enforceable." Larsen, 2017 WL 2366334, at *2. "'Only those terms upon which the settlement hinges are to be considered material terms,' and whether a term is material is a legal question for the court." Id. at *2 (quoting Jackson, 2009 WL 2982924, at *4).

Generally, the material terms of a settlement agreement are (1) payment of an identified sum (2) in exchange for the release of a claim. See, Larsen, 2017 WL 2366334, at *4 (finding the material terms of a settlement agreement were payment of a specified amount in exchange for a dismissal of claims); Jackson, 2009 WL 2982924, at *4 (finding the only material terms were

that the defendant would pay a specified amount in exchange for the plaintiff's dismissal, despite the settlement offer stating that is was "[s]ubject to written settlement with confidentiality, non-disparagement, release, no re-employment—all the customary terms"). However, where additional terms are discussed prior to reaching a settlement agreement, those terms may also be material. See, Ayala, 2017 WL 29659, at *3 (finding that confidentiality was a material term); Transclean Corp., 2002 WL 31185886 at *8 (finding that the defendant not receiving a license going forward was a material term). But see, Jackson, 2009 WL 2982924, at *4 (finding that confidentiality, non-disparagement, release, and no re-employment were not material terms).

Here, the Parties did not discuss any ancillary terms prior to reaching a settlement agreement besides an identified settlement amount. (See, e.g., Ex. 1 [Docket No. 9-1], at 4–9). Both parties understood that the settlement amount would be exchanged for Smith releasing his claim for long-term disability benefits.[3] (Jan. 7, 2020, Motion Hearing, Digital Record at 1:57, 2:05–2:06, 2:09, 2:11–2:12). As explained above, the Parties contemplated the execution of a subsequent written agreement, however, acceptance of the $50,000 settlement offer was not contingent on its execution. Although the contemplated written agreement would have undoubtedly included additional terms, those additional terms were ancillary not material. See, e.g., Larsen, 2017 WL 2366334, at *3–4; Jackson, 2009 WL 2982924, at *4; Transclean Corp., 2002 WL 31185886 at *8. Therefore, the material terms of the settlement agreement between Smith and Unum are: (1) Unum's payment of $50,000 (2) in exchange for Smith releasing his claim for long-term disability benefits.

[3] The Court notes the record reflects that the Complaint did not embrace nor did Parties discuss any potential life insurance premium claims, and therefore, the Parties' settlement agreement does not encompass Plaintiff's potential life insurance premium claims; if any even exist. (See, Jan. 7, 2020, Motion Hearing, Digital Record at 1:57, 2:05–2:06, 2:09, 2:11–2:12).

Accordingly, the Court declines to accept Smith's argument that there was no meeting of the minds as to all material terms of the settlement.

**iv. Counteroffer**

Lastly, Smith argues that he "did not accept Unum's offer; instead he asked [Plaintiff's Counsel] to get a higher price, which is akin to a counteroffer," and therefore served as a rejection of Unum's offer. (Mem. in Opp'n [Docket No. 14], at 8–9). The Court finds Smith's argument here is not supported by the record.

As already explained above, Plaintiff's Counsel and Unum engaged in negotiations for the settlement of Smith's claims for long-term disability benefits. (See, e.g., Ex. 1 [Docket No. 9-1], at 5–9; Jan. 7, 2020, Motion Hearing, Digital Record at 1:57, 2:05–2:06, 2:09). Plaintiff's Counsel received Unum's $50,000 settlement offer and called Smith to discuss it. (Smith Decl. [Docket No. 15] ¶ 2). Smith expressed his acceptance of Unum's $50,000 settlement offer to Plaintiff's Counsel. (Id. ¶ 2; Jan. 7, 2020, Motion Hearing, Digital Record at 1:59, 2:04, 2:06, 2:08–2:09). With express authority, Plaintiff's Counsel then sent the January 10, 2019, email to Unum, thereby accepting Unum's $50,000 settlement offer on behalf of Smith and creating an enforceable settlement agreement. (See, Id. at 1:57, 2:07–2:08, 2:09; Ex. 1 [Docket No. 9-1], at 4).

Only thereafter did, Smith change his mind and attempt to demand a higher settlement amount. (See, e.g., Bauer Decl. [Docket No. 16] ¶ 6; Jan. 7, 2020, Motion Hearing, Digital Record at 1:59, 2:04, 2:08, 2:09). Although "[i]t is well-settled that a counteroffer is treated simultaneously as a rejection of the offer and as a new offer," Smith did not make any purported counteroffer until after Unum's $50,000 settlement offer had already been accepted. See, Jackson, 2009 WL 2982924, at *3. Therefore, Smith's purported counteroffer, tendered after the

settlement agreement was created, "d[id] not change the fact that an enforceable agreement exist[ed]" and did not eviscerate the already-formed settlement agreement.[4] See, e.g., Ayala, 2017 WL 29659, at *3.

## III. CONCLUSION

A binding settlement agreement between Plaintiff Smith and Defendant Unum was formed on January 10, 2019, when Plaintiff's Counsel, with authority from Smith, accepted Unum's settlement offer on behalf of Smith. The material terms of the settlement agreement are that Unum will pay Smith $50,000 in exchange for Smith releasing his claim against Unum for long-term disability benefits.

For the foregoing reasons, **IT IS HEREBY RECOMMENDED THAT:**

1. Defendant's Motion to Enforce the Settlement Agreement [Docket No. 5] be **GRANTED**.

Dated: February 5, 2020

/s Leo I. Brisbois
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by March 9, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for

[4] Moreover, Smith's purported counteroffer was not communicated to Unum until March 6, 2019. (Bauer Decl. [Docket No. 16] ¶ 7). The nearly two months of silence by Smith and Plaintiff's Counsel objectively served to further confirm their January 10, 2019, settlement offer acceptance. Cf., Transclean Corp., 2002 WL 31185886 at *6 ("[A]n attorney's unauthorized settlement of a claim may still bind a client through the theory of implied acceptance. Implied acceptance may be found through conduct or even silence, if the party has a duty to deny." (citations omitted)).

each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.